**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 8, 2022**

# In the Court of Appeals of Georgia

A22A0388, A22A0389. MICHAEL SMITH v. PARKS HOTELS & RESORTS, INC. et al.; and vice versa.

DILLARD, Presiding Judge.

In Case No. A22A0388, Michael Smith—as conservator of five minor children whose mother was killed during a shift working as a housekeeper for Parks Hotels & Resorts, Inc. ("Hilton")—appeals the trial court's denial of his motion to set aside a workers' compensation award issued by the Georgia State Board of Workers' Compensation (the "Board"), reflecting its approval of a settlement agreement and stipulation entered into by Hilton and Smith's predecessor, Claire Cottingham. In doing so, Smith argues the trial court erred by (1) finding that he invited or induced any error in the award because the settlement was executed before he was appointed as the children's conservator; (2) permitting Hilton to seek equitable relief to protect

a void settlement agreement it drafted and submitted for approval; and (3) relying on principles of estoppel in denying his motion.

In Case No. A22A0389, Hilton cross-appeals, arguing that—although it correctly denied Smith's motion to set aside the workers' compensation award—the trial court erred in finding there was a non-amendable defect on the face of the record because (1) the Board had statutory authority to approve the settlement, even with the limited powers the probate court granted to Cottingham as the initial conservator for the children; and (2) even if Cottingham needed additional powers or an additional appointment by the Board to legally compromise the children's claim arising from their mother's death, the Board had an express right to easily correct any such defect, rendering it amendable. For the reasons set forth *infra*, we affirm the trial court's decision in both cases.[1]

Here, the undisputed record shows that in 2016, Stephanie Riddle—the mother of the five children at issue—worked as a housekeeper at a Hilton hotel. On July 7, 2016, while Riddle was at work, her boyfriend went to her workplace, and after being

---

[1] Oral argument was held in these consolidated appeals on February 1, 2022, and is archived on the Court's website. *See* Court of Appeals of Georgia, Oral Argument, Case No. A22A0388 and A22A0399 (Feb. 1, 2022), *available at* https://www.gaappeals.us/oav/A22A0388.php

told by another Hilton employee where to find her, entered the room she was cleaning and shot her to death. Thereafter, Cottingham (Riddle's aunt) was appointed by the probate court to be the permanent legal guardian of four of Riddle's children and temporary guardian of the other child. Cottingham then retained attorney Leighton Deming to represent her in her capacity as the children's guardian.

On August 1, 2016, Deming and Cottingham (on behalf of the children) filed a workers' compensation claim with the Board related to Riddle's death. Hilton responded that even though Riddle was shot at work, Cottingham's claim was "not a compensable accident" under Georgia law. Subsequently, on October 27, 2016, the Board sent a notice of mediation to the parties, ordering them to attend mediation and noting that *Deming* requested "mediation to resolve [Riddle's] entitlement to income benefits, medical treatment/expenses, and any other pending issues, including but not limited to settlement."

On November 21, 2016, the probate court (in five separate orders) issued letters of conservatorship, appointing Cottingham as the conservator of all five children. And after the Board-ordered mediation, Cottingham—individually and on behalf of the children—reached a settlement with Hilton, under which Hilton agreed to pay a lump sum of $150,000 to settle the claim. In exchange for this payment, Cottingham

3

signed a settlement, release, and indemnification, which provided, in part, that she agreed to

> completely release and forever discharge [Hilton] from any and all past, present, or future claims, demands, obligations, actions, causes of action, *wrongful death claims*, loss of consortium claims, contribution or indemnity claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on workers' compensation, a tort, [or] contract . . . .[2]

In the settlement agreement, Cottingham also executed a "warranty of capacity to execute agreement[,]" certifying that she had the sole right and exclusive authority to execute the agreement and receive the sums specified in it. Further, the settlement agreement contained a provision requiring both parties to "cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of [the] [s]ettlement [a]greement to specifically include a dismissal of [any] lawsuit in its entirety with prejudice."

In conjunction with the settlement agreement, the parties submitted a so-called "throw away memorandum" to the Board, explaining that the $150,000 lump sum

---

[2] (Emphasis supplied).

payment included (1) $37,500 for Cottingham's attorney fees; (2) $2,639 for reimbursement of expenses; and (3) $109,861 to be paid to Cottingham for the benefit of the Riddle children. The memorandum also stated that the parties "specifically agree[d] that the conservatorships for all minor children will be funded as required by law and specifically approved by the [p]robate [c]ourt."

Thereafter, on March 2, 2017, the probate court appointed Ann Herrera as the administrator of Riddle's estate, which authorized her to receive the settlement funds, and she later obtained the bond necessary to do so. The next day, one of Hilton's representatives sent a revised settlement agreement and throw away memorandum to Herrera, indicating that the primary change was that the funds owed to the children would now be paid to her as the administrator of the estate. Herrera *agreed* to this revision. Then, on March 4, 2017, Cottingham and Hilton filed a "stipulation and agreement" with the Board. In the stipulation, Hilton denied liability for Riddle's death, and the parties agreed that it did not arise in the course of her employment. The parties requested that the Board adopt the stipulation as its findings of fact and "enter its [a]ward in terms of law based upon the [s]tipulations adjudicating the absence of liability on the part of Hilton . . . ." Cottingham signed the stipulation as both the guardian and conservator of Riddle's children.

5

Subsequently, on March 29, 2017, the Board adopted the parties' stipulation and approved the settlement agreement. And approximately one year later, on March 27, 2018, Herrera filed a notice in the probate court, detailing the dates and amounts for when Hilton paid her different portions of the settlement funds. Then, after deducting various fees and expenses, Herrera received $98,740.67 from Hilton, which is approximately $20,000 for the benefit of each child.

In early 2018, Herrera filed a petition to remove Cottingham as the children's conservator and appoint a county conservator to replace her, contending that Cottingham had been unable to post the bond necessary to receive the proceeds of the worker's compensation settlement from Herrera. According to Herrera, those proceeds would not be available to the Riddle children unless Cottingham was replaced with a bondable successor. At some point during the pendency of the probate proceedings, Deming passed away, and Cottingham retained attorney Laura Bryant to represent her in this matter. On April 9, 2018, Bryant e-mailed Herrera, indicating that Cottingham was willing to resign as conservator for the children, and she wanted Michael Smith to replace her. Herrera agreed that Smith would be Cottingham's replacement.

6

Thereafter, on April 12, 2018, Smith and Bryant—on behalf of Herrera and Cottingham—entered a consent agreement as to each child, under which they agreed that Cottingham would resign as conservator and Smith would replace her. To this effect, the parties attached to the agreement a resignation letter signed by Cottingham and a consent to serve as conservator signed by Smith. Further, each of the five consent agreements provided that Smith would post a $20,000 bond for each child before the letters of conservatorship were issued. Ultimately, on June 13, 2018, the probate court approved the consent agreements and appointed Smith as the new conservator. In its orders, the probate court directed Smith to post a $20,000 bond for each child.

On November 4, 2019, Smith filed a motion in the trial court to set aside the workers' compensation award. In doing so, Smith argued that the settlement approved by the Board was void because there was a non-amendable defect on the face of the record, and the Board's approval of the settlement was the result of fraud, accident, or mistake. Hilton responded, opposing the motion and contending that the workers' compensation award cannot be set aside because any defect on the face of the record was amendable, and even if not, the equitable doctrines of invited error, unclean hands, and judicial estoppel barred Smith's motion. Following a hearing, the trial

7

court denied Smith's motion to set aside the workers' compensation award. Smith then filed a motion for reconsideration, which the trial court also denied. These cross-appeals follow our grant of Smith's application for a discretionary appeal.

A trial court's decision regarding a motion to set aside a judgment will not be reversed "absent a showing of manifest abuse of discretion."[3] And a trial court's ruling on a motion to set aside a judgment will be affirmed "if there is any evidence to support it."[4] With this standard of review in mind, we turn to the parties' specific claims of error.

*Case No. A22A0389*

1. We address Hilton's cross-appeal first because it involves threshold issues, which are dispositive of Smith's main appeal. Hilton essentially argues the trial court erred in finding that there was a non-amendable defect in the record, which would

---

[3] *Brown v. Gadson,* 288 Ga. App. 323, 323 (654 SE2d 179) (2007) (punctuation omitted); *accord Head v. Wachovia Bank, N.A.*, 264 Ga. App. 608, 610 (2) (591 SE2d 424) (2003).

[4] *Cherwood, Inc. v. Marlin Leasing Corp.*, 268 Ga. App. 64, 64 (601 SE2d 356) (2004) (punctuation omitted); *see Granite Loan Sols., LLC v. King,* 334 Ga. App. 305, 306-07 (3) (779 SE2d 86) (2015) ("We review a ruling on a motion to set aside for abuse of discretion and affirm if there is any evidence to support it.").

warrant setting aside the workers' compensation award under OCGA § 9-11-60 (d) (3).[5] We agree.

In considering whether a judgment should be set aside under OCGA § 9-11-60 (d) (3), our Supreme Court has explained, "[a] judgment is void on its face when there is a non-amendable defect appearing on the face of the record . . . ."[6] Put another way,

---

[5] In his motion to set aside the workers' compensation award, Smith provided two statutory bases for setting aside the award. First, Smith contended the award should be set aside under OCGA § 9-11-60 (d) (3) because, absent an order issued by the probate court approving the workers' compensation settlement, there was a non-amendable defect on the face of the record. *See* OCGA § 9-11-60 (d) (3) ("A motion to set aside may be brought to set aside a judgment based upon . . . [a] non[-]amendable defect which appears upon the face of the record or pleadings."). Second, he relied on OCGA § 9-11-60 (d) (2) in arguing that the award must be set aside because the Board's approval of the settlement was the result of fraud, accident, or mistake. *See* OCGA 9-11-60 (d) (2) ("A motion to set aside may be brought to set aside a judgment based upon . . . [f]raud, accident, or mistake or the acts of the adverse party unmixed with the negligence or fault of the movant[.]"). In ruling on Smith's motion, the trial court rejected the latter argument but agreed with Smith that there was a non-amendable defect on the face of the record due to Cottingham's failure to obtain the probate court's approval of the settlement in violation of its order requiring her to do so. In his appeal, Smith does not challenge the trial court's ruling that the workers' compensation award was not the result of fraud, accident, or mistake. Thus, he has abandoned any such argument in this regard. *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) (823 SE2d 763) (2019) (explaining that the Court will not address a potential issue or argument that appellant did not raise on appeal); *Jones v. Bd. of Regents of Univys. of Ga.*, 262 Ga. App. 75, 79 (3) (585 SE2d 138) (2003) (deeming issue not argued on appeal abandoned).

[6] *Lawing v. Erwin*, 251 Ga. 134, 134 (303 SE2d 444) (1983) (punctuation omitted); *see Horizon Credit Corp. v. Lanier Bank & Tr. Co.*, 220 Ga. App. 362, 362

9

a motion to set aside a judgment "must be grounded on defects apparent on the face of the record, which are not amendable."[7]

(a) Before we can determine whether a defect on the face of the record is amendable, we must first address whether any evidence supports the trial court's finding that a defect actually existed, amendable or otherwise.

Other than detailing the law relevant to setting aside a judgment under OCGA § 9-11-60 (d) (3), the following is the trial court's entire discussion of the matter:

> In this case, the [p]robate [c]ourt restricted Cottingham's ability to enter into a settlement agreement that would dispose of the children's property without obtaining a court order by the [p]robate [c]ourt. Cottingham's entering into an agreement that purports to "finally and forever conclude" each child's claim in violation of the [p]robate [c]ourt order created a non-amendable defect that appears on the face of the record.

But the trial court's underlying factual finding that the probate court required its written approval to validate the settlement is belied by the record. In April 2019, after

---

(1) (469 SE2d 452) (1996) ("[When] there is a non-amendable defect appearing on the face of the record[,] . . . the judgment is void.").

[7] *Love v. Nat'l Liberty Ins. Co.*, 157 Ga. 259, 262 (1) (121 SE 648) (1924); *see Horizon Credit Corp.*, 220 Ga. App. at 362 (1) ("The presence of an *amendable* defect on the face of the record . . . does not void the action.").

Smith was appointed conservator for the children (but before he initiated the instant action), he filed an "Emergency Petition for Declaratory Judgment" in the probate court. In this petition, Smith sought clarification as to his rights and responsibilities as successor conservator and specifically requested that the probate court inform the parties as to whether its approval of the workers' compensation settlement was required. In its written order addressing the petition, the probate court noted the Board's "authority to review appropriate settlements is governed by Georgia law and the settlement agreement's terms." Then, not only did the probate court clarify that the settlement at issue did *not* require its approval, it expressly stated that it "lacked legal authority" to even review a settlement approved by the Board in a workers' compensation proceeding.[8]

Moreover, although the probate court believed it lacked authority to review a workers' compensation settlement, it was certainly aware that Hilton paid Herrera approximately $20,000 for the benefit of each child when it ordered Smith to post bond for the *same* amount to receive those funds from her. In doing so, the probate

---

[8] We express no opinion as to whether probate courts are generally authorized to require approval, via court order, of a settlement approved by the Board in a separate but related workers' compensation proceeding. The issue before us is narrowly limited to whether the evidence supports the trial court's determination that the probate court exercised such authority in *this* case.

court never objected to the source of those funds or questioned Hilton's involvement. As to any relevant language in a probate court order precluding Cottingham from entering a workers' compensation settlement agreement without its approval, Smith cites only to the letters of conservatorship it issued to her, which state that she "shall . . . [n]ot sell or give away any of the [m]inor's property without a court order." But again, the probate court *subsequently* issued a written order explaining that this requirement did *not* apply to *workers' compensation* settlement agreements approved by the Board. Thus, the evidence conclusively shows the alleged defect on the face of the record identified by the trial court simply did not exist.

In sum, we are mindful that, in our limited role as an appellate court, "[w]e review a ruling on a motion to set aside for abuse of discretion and affirm if there *is any evidence to support it*."[9] Further, this standard of review is the any evidence rule, and "absent an abuse of discretion, we will not reverse a trial court's refusal to set aside a judgment."[10] But here, there is *no evidence* to support the trial court's factual

---

[9] *Vasile v. Addo*, 341 Ga. App. 236, 240 (2) (800 SE2d 1) (2017) (emphasis supplied); *accord Paul v. Paul*, 355 Ga. App. 828, 828 (846 SE2d 138) (2020).

[10] *Stokes & Clinton, P.C. v. Noble Sys. Corp.*, 318 Ga. App. 497, 498 (734 SE2d 253) (2012) (punctuation omitted); *accord Watts v. Brittian*, 362 Ga. App. 93, 95 (1) (866 SE2d 631) (2021).

finding that the probate court required the written approval at issue. To the contrary,

the evidence discussed *supra* directly contradicts the trial court's factual finding in

this regard. Under such circumstances, the trial court abused its discretion in finding

that there was a defect of any kind on the face of the record.[11] Nevertheless, despite

this erroneous factual finding, the trial court did not abuse its discretion in ultimately

denying Smith's motion to set aside the workers' compensation award because,

[11] *See Worthy v. Farmers' Life Confederation*, 139 Ga. 81, 82 (76 SE 856) (1912) (Syllabus by the Court) ("[T]here was no evidence offered at the hearing of the motion to set aside, and consequently the judgment in favor of the movant on that motion was unauthorized."); *Nadel v. Branch Banking & Tr. Co.*, 340 Ga. App. 213, 217 (1) (797 SE2d 140) (2017) ("Inasmuch as no evidence established that [the plaintiff] gave [the defendants] the required notice of the hearing date, the court abused its discretion in denying the motion to set aside the judgment."); *Stokes & Clinton, P.C.*, 318 Ga. App. at 498-99 (vacating and remanding the trial court's denial of motion to set aside judgment when it erroneously found that the defendant waived its right to assert the defense of improper service); *Moore v. Davidson*, 292 Ga. App. 57, 60 (663 SE2d 766) (2008) (reversing the trial court's denial of a motion to set aside a default judgment, in which the defendant argued he lacked notice of a trial date when there was no evidence to support the trial court's factual finding that the defendant had such knowledge). *Cf. Koby v. Koby*, 277 Ga. 160, 160 (2) (587 SE2d 48) (2003) (affirming the trial court's denial of ex-wife's motion to set aside a divorce decree, in which she claimed she had reconciled with her ex-husband, and explaining that "the [trial] court specifically found that there was not a bona fide reconciliation, and *there was ample evidence to support that conclusion*" (emphasis supplied)); *Newsome v. Johnson*, 305 Ga. App. 579, 584 (1) (699 SE2d 874) (2010) ("Because some evidence supported the trial court's finding that personal service occurred, we affirm the trial court's order[ ], denying the motion to set aside default judgment . . . .").

absent a non-amendable defect on the face of the record, he has not provided a statutory basis for granting it.[12] Indeed, we will affirm a judgment, "so long as it is right for any reason."[13]

(b) Turning to the substance of Hilton's appeal, it contends that "the Board had the statutory authority to approve the [w]orkers' [c]ompensation [s]ettlement even with the limited powers granted to the conservator; and . . . even if the [c]onservator had to have additional powers or an additional appointment by the Board to legally compromise the [s]urviving [m]inors' claim, the Board had an express right to easily correct such a 'defect,' rendering the defect amendable." While the trial court did not address or rule upon any issues regarding *the Board's* authority in this matter,[14] we need not address the merits of Hilton's cross-appeal given our holding in Division 1, *supra*.

---

[12] *See supra* note 5.

[13] *Schwartz v. Schwartz*, 275 Ga. 107, 108 (1) n.5 (561 SE2d 96) (2002); *see Harold v. Harold*, 286 Ga. 175, 176 (686 SE2d 123) (2009) ("[N]otwithstanding the trial court's stated reason for setting aside its final judgment, we will affirm the order setting aside that judgment under the right for any reason rule if in fact the trial court was setting aside an unauthorized . . . judgment.").

[14] *See Shelley v. Town of Tyrone*, 302 Ga. 297, 308 (3) (806 SE2d 535) (2017) ("[A]n appellant may not on appeal raise questions or issues neither raised *or ruled upon* by the trial court." (punctuation omitted & emphasis supplied)).

14

(2) Smith argues the trial court abused its discretion in denying his motion to set aside the workers' compensation award because (a) he could not have induced an error prior to becoming involved in the matter; (b) Hilton cannot seek equitable relief to protect a void settlement agreement it drafted and submitted for approval; (c) the court's decision cannot be defended on "some other principle of estoppel"; and (d) he is not responsible for Cottingham's conduct. But given our holding in Division 1 *supra*, Smith has not established any statutory basis for setting aside the award, and we need not separately address whether his petition was also barred by any equitable principles.

For all these reasons, we affirm the trial court's denial of Smith's motion to set aside the workers' compensation award in both Case Nos. A22A0388 and A22A0389.

*Judgments affirmed in Case No. A22A0388 and Case No. A22A0389. Mercier and Markle, JJ., concur*.